## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWELL T HENRY II,                              :
                                                :   CIVIL ACTION NO. 22-4614
                                                :
                          Plaintiff,            :
         V.                                     :
                                                :   JURY TRIAL DEMAND
UNITED LUTHERAN SEMINARY                         :
                                                :
            and                                 :
                                                :
DR. R. GUY ERWIN                                 :
                                                :
                        Defendants.             :

## CIVIL ACTION - COMPLAINT

Plaintiff Edwell T. Henry II brings this action for reinstatement, damages and other relief to redress injuries Plaintiff suffered due to Defendants, United Lutheran Seminary and Dr. R. Guy Erwin ("Defendants") discrimination and harassment in the workplace including disparate treatment, retaliation and hostile work violations, and violations of rights secured to Plaintiff by the Civil Rights Act of 1991 ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), the Equal Pay Act of 1963, as amended, (Pub. L. 88-38), the Philadelphia Fair Practices Ordinance, Chapter 9-1100 of the Philadelphia Code, titled in full as "Philadelphia Fair Practices Ordinance: Protections Against Unlawful Discrimination," and the regulations thereunder ("PFPO") against Defendants.

## PARTIES

1.      Plaintiff Edwell T Henry II ("Plaintiff" or "Mr. Henry") an adult individual residing in Mount Laurel, New Jersey 08054.

2.      Defendant United Lutheran Seminary ("Defendant" or "ULS"), a graduate

professional school that provides theological educational services, has a place of business at

7301 Germantown Avenue, Philadelphia, Pennsylvania 19119 and at 61 Seminary Ridge,

Gettysburg, PA 17325.

3.      Defendant Dr. R. Guy Erwin ("Defendant" or "President Erwin") is President and

Ministerium of Pennsylvania Chair and Professor of Reformation Studies for ULS and splits his

time between ULS's Philadelphia and Gettysburg campuses.

4.      Defendant Mr. Erwin is a supervisor with immediate authority over Plaintiff and

the authority to subject Plaintiff to a tangible employment action defined as altering the terms

and conditions of Plaintiff's employment for Defendants.

5.      ULS is in an industry affecting interstate commerce and regularly conducts

business in the Commonwealth of Pennsylvania within the City of Philadelphia, within the

Eastern District of Pennsylvania.

6.      At all times material hereto, ULS employed more than fifty (50) full time

employees.

7.      At all times material hereto, ULS acted by and through its authorized agents,

servants, and/or employees acting within the course and scope of their employment with ULS

and in furtherance of ULS's business.

8.      At all times material hereto, ULS acted as an employer within the meaning of the

statutes and ordinance (Title VII, the PHRA and the PFPO), which form the basis of this matter.

9.      Plaintiff was an employee of ULS within the meaning of the statutes and

ordinance (Title VII, the PHRA and the PFPO), which form the basis of this matter.

## JURISDICTION AND VENUE

10.     The causes of action which form the basis of this matter arises under Title VII,

Section 1981, the ADEA, the PHRA, and the PFPO.

11.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

12.     The District Court has jurisdiction over Count II (Section 1981) pursuant to 42 U.S.C. § 1981 and 28 U.S.C. § 1331.

13.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims derive from a common nucleus of operative facts.

14.     Venue is proper in the District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 139l(b) as this is where one or more defendants reside, where a substantial part of the events and omissions giving rise to the claims occurred, and where one or more defendants may be found.

15.     Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

16.     Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b)(2) because Covanta does business in this District, is subject to personal jurisdiction in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

17.     On May 10, 2021, Plaintiff dual filed a retaliation complaint with the Pennsylvania Human Relations Commission ("PHRC") (PHRC case no. 202002300 and Equal Employment Opportunity Commission ("EEOC") No. 17F202161283)   ("EEOC") ("Administrative Complaints").

18.     On or about June 5, 2021, Plaintiff filed an amended retaliation complaint with PHRC.

19.     On or about August 19, 2022, the EEOC issued a Notice of Right to Sue to Plaintiff.

20.     Plaintiff hereby commences this lawsuit within ninety days of the date when Plaintiff received a copy of the Notice of Right to Sue.

21.     More than a year has passed since Plaintiff's Administrative Complaints and Amended Administrative Complaints were filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

22.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## MATERIAL FACTS

23.     Defendant, ULS was formed on July 1, 2017, via a consolidation of two Lutheran seminaries: Lutheran Theological Seminary at Philadelphia ("LTSP") and Lutheran Theological Seminary at Gettysburg ("LTSG").

24.     Plaintiff, Mr. Henry is a seasoned human resources professional who was hired to serve as Defendant, ULS's Director of Human Resources in September 2018.

25.     In October 2020, ULS promoted Mr. Henry to the position of Vice President for Human Resources and Diversity, Equity, and Inclusion.

26.     During his tenure with ULS, Mr. Henry's performance was excellent and he received uniformly positive evaluations.

27.     In January 2021, for example, the Chair of ULS's Board of Trustees, Peter Boehringer, commended Mr. Henry for his success in managing and remediating student and staff complaints.

28.     Mr. Henry maintained productive relationships with his colleagues and truly enjoyed the work at ULS he was tasked with.

29.     Prior to his termination, there was no record of employee discipline related to

Plaintiff's employment for Defendants, formal or informal.

30.     ULS has a documented history of problematic allegations of systemic racism by ULS's students[1] and, as HR/DEI Vice President, Mr. Henry's duties included investigating all Title IX complaints and internal bias complaints.

31.     Mr. Henrey received the position due to Defendants' problematic history of systemic racism and discriminatory conduct and comments that were severe and pervasive and extended past Mr. Henrey to other areas of the organization.

32.     Mr. Henry had often engaged in protected activity by presenting concerns and detailing issues related to the systemic racism at ULS.

33.     In early 2021, Plaintiff's office received a number of race and gender discrimination complaints against several ULS professors and staff.

34.     In response, and pursuant to Mr. Henry's role as HR/DEI Vice President, on or about March 10, 2021, Mr. Henry engaged in protected activity when he e-mailed Title IX investigation notices to seven accused parties at ULS, copying ULS's President, R. Guy Erwin, on each.

35.     Pursuant to Plaintiff's March 10, 2021, protected activity in taking action to investigate and ameliorate discrimination and harassment in the workplace based on race, Defendants began a sustained campaign of antagonism and retaliation which led to an abusive and hostile work environment for Plaintiff.

36.     Plaintiff engaged in protected activity when Plaintiff took action in response to reports of race discrimination by drafting and presenting investigation notices to accused parties.

37.     By the time Mr. Henry reached the sixth or seventh of these investigation notices,

---

[1] Students Concerned, *A Timeline of Racism at United Lutheran Seminary*, SEASONANDSTORY.COM, (last visited November 13), https://www.seasonandstory.com/uls-racism/.

Defendants took intentional adverse action against Plaintiff by eliminating Plaintiff's access to email, a tool that Plaintiff required to perform the essential functions of his position and employment.

38.     Because Defendants subjected Plaintiff to adverse action by eliminating Plaintiff's access to email, Plaintiff began receiving "undeliverable" errors when Plaintiff attempted to use his email account.

39.     Plaintiff discovered that President Erwin had intentionally eliminated Plaintiff's access to email in response to Plaintiff's protected activity.

40.     Pursuant to investigating race discrimination, Plaintiff no longer had access to email because President Erwin shut off his ULS e-mail access.

41.     The following morning, Mr. Henry received a FedEx letter from President Erwin containing notice of an suspension to which Plaintiff was subjected by Defendant in response to Plaintiff's protected activity.

42.     The April 2021, suspension was another adverse employment action to which Plaintiff was subjected by Defendants as part of Defendants campaign of discrimination, harassment and retaliation.

43.     President Erwin further instructed Mr. Henry not to visit the campus or to have any contact with staff during the adverse employment action, to wit, the suspension.

44.     Plaintiff had previously requested medical leave under the Family and Medical Leave Act ("FMLA") so that Plaintiff could intermittently take leave, when needed, to care for a family member.

45.     Defendants also subjected Plaintiff to violations of Plaintiff's rights under the FMLA when Defendants interfered with Plaintiff's rights and subjected Plaintiff to retaliation by

forcing Plaintiff out of work.

46.     Plaintiff specifically requested intermittent leave under the FMLA, and Defendants intentionally forced Plaintiff out of work as a response to Plaintiff's protected activity.

47.     After Mr. Henry's email was shut-off, President Erwin began to inappropriately use Plaintiff's personal cell phone number to send messages that were harassing, hostile and subjected Plaintiff to abusive, discrimination and retaliation.

48.     President Erwin ordered Mr. Henry not to visit the campus or to have any contact with staff during the forced suspension.

49.     To Mr. Henry's surprise, and while ULS had recently approved Mr. Henry's request for intermittent FMLA leave to care for his elderly mother, ULS suspended Plaintiff and counted the suspension time as days when Plaintiff used his FMLA time.

50.     This illegal calculation of FMLA time reduced Plaintiff's rights to medical leave so that Plaintiff's annual medical leave requirements were reduced on days when Plaintiff was ready, willing, able, to work.

51.     Sometime around April, 2021, Plaintiff notified Defendants that Plaintiff did not want to use FMLA time and that Plaintiff did not want to be forced out of work, however, Defendants refused to consider Plaintiff's rights and continued to force Plaintiff out of work as part of a campaign of FMLA interference, FMLA retaliation, and retaliation subject to Plaintiff's protected activity.

52.     Defendants did not allow Plaintiff to return to work from the illegal suspension and Defendants expressly informed Plaintiff that the suspension was indefinite.

53.     Defendants would not even consider allowing Plaintiff to return to work.

54.     Plaintiff never would be permitted to return to work.

55.     Defendants disregarded Plaintiff's requests and rights under the FMLA and placed Mr. Henry on a forced leave that culminated in Plaintiff' termination.

56.     Mr. Henry received a letter from Defendants' counsel offering Plaintiff severance in exchange for his resignation and a release of claims.

57.     Mr. Henry declined the severance offer and did not agree to release any claims pursuant to Defendants obvious, willful, intentional, disregard for the laws and Plaintiff's rights.

58.     On May 4, 2021, President Erwin confirmed Plaintiff's illegal suspension in writing by writing that Plaintiff's leave from work was indefinite, again.

59.     On May 5, 2021, Mr. Henry signed a PHRC complaint against ULS based on the above facts, and Defendants willful and intentional disregard for Plaintiff's right and Defendants willful and intentional violations of the law.

60.     On May 27, 2021, ULS was served with a copy of Mr. Henry's PHRC Complaint.

61.     Defendants responded to Plaintiff's complaint by permanently terminating Plaintiff's employment.

62.     Days after Defendants were served with the complaint, Defendants terminated Plaintiff's employment, on June 2, 2021.

63.     Defendants could not even articulate a legitimate reason for Plaintiff's termination and refused to even attempt one.

64.     Plaintiff was terminated due to discrimination and retaliation.

    a.  Retaliation under the FMLA

    b.  Retaliation under the PHRA, Title VII, the PFPO.

65.     Defendant never provided any reason, legitimate or not, for the adverse employment action.

66. Mr. Henry was suspended, and forced to discontinue working less than a day after Plaintiff engaged in protected conduct by notifying President Erwin of several Title IX complaints.

67. President Erwin aided and abetted the discrimination and retaliation as the individual who subjected Plaintiff to each and ever adverse employment action identified herein.

68. Each of the adverse actions taken against Mr. Henry was either directed or carried out personally by President Erwin.

69. Because of Mr. Henry's commitment to zealously investigate all Title IX and internal complaint, ULS retaliated and terminated Mr. Henry's employment, less than a week from the time ULS was served with a copy of Mr. Henry's PHRC Complaint.

70. Any attempt to justify the unlawful adverse action to which Plaintiff was subjected by ULS is pretextual.

71. ULS terminated the employment of Mr. Henry without advance notice to him or the community.

72. Mr. Henry work performance was exemplary.

73. Mr. Henry was terminated less than a week from when ULS received Mr. Henry's PHRC Complaint.

74. Mr. Henry supervised a staff of African Americans.

75. ULS employee Rhonda Shupp ("Ms. Shupp") often subjected Plaintiff and his staff to abusive conduct and comments based on race.

76. Rhonda Shupp subjected Plaintiff and his staff to insults and verbal abuse.

77. For example, Ms. Shupp often illustrated what appeared to be an unfair suspiciousness of Mr. Henry's staff by asking them questions, despite the fact that these were Mr. Henry's direct reports, that Ms. Shupp did not ask non-African American staff such as:

    a.  Why were they submitting documents?

    b.  How long was their lunch?

    c.  Who approved your day off?

78.    Additionally, one of Mr. Henry's African American employees, Jackie King, raised concern over Ms. Shupp being verbally abusive to her to Mr. Henry. Jackie King, asked Mr. Henry, "Ed why is it we are the only blacks being treated this way?"

79.    Mr. Henry told his African American direct reports to document the events and that Mr. Henry would report these and other concerns to Dr. Erwin, and Defendants did nothing.

80.    Ms. King reported back to Mr. Henry that she told Dr Erwin that Mr. Carlson and Ms. Shupp were constantly abusive towards her and Ms. King shared that she may have to quit because the abuse was becoming overbearing. Defendants did nothing about the abuse.

81.    Additionally, Mr. Henry was on the receiving end of racially insensitive comments and conduct from Mr. Carlson about Asians and massage parlors in Mechanicsburg, PA.

82.    Mr. Henry informed Mr. Carlson in writing those were racially insensitive comments and he should refrain engaging in this kind of illegal conduct.

83.    When Mr. Henry informed Dr. Erwin of other racially insensitive comments, Dr. Erwin responded, "well you know Buff is just weird."

84.    Mr. Henry informed Dr. Green that his various insensitive comments about the sexual orientation of female ULS employee was inappropriate, and in response Dr. Green stated, "I'm not worried I got a million-dollar insurance policy."

85.    The idea that Defendants could continue to engage in illegal conduct because their insurance policy could afford to cover the illegal conduct financially indicates Defendants willful and intentional violation of the law.

86.     After Mr. Henry reported various forms of discrimination to African American students and staff of ULS and to himself, Dr. Erwin began to ignore Mr. Henry's complaints.

87.     Pursuant to Plaintiff engaging in protected activity  Dr. Erwin's treatment of Mr. Henry deteriorated and Dr. Erwin began using the same insensitive and hostile language that other ULS employees used in his emails to Mr. Henry.

88.     The harassment and abusive conduct to which Mr. Henry was subjected was constant and relentless. It was analogous to the pattern of the many Complaints Mr. Henry investigated while at ULS.

89.     Indeed, ULS leadership harassed the African American students and staff and would then attempt to use Mr. Henry to cover up and management the racist actions of ULS and its leadership.

### *Mr. Henry's Unequal Pay*

90.     When Mr. Henry was promoted in October 2020, Mr. Henry was ULS's first and only black employee to serve in the level of Vice President.

91.     Mr. Henry and ULS's Vice President for Advancement, Angela Zimmann ("Ms. Zimmann") (White Woman) were similarly situated employees.

92.     Mr. Henry was paid a salary of $88,000, while Ms. Zimmann received a salary of $110,000. ULS has not offered any rationale for this pay disparity.

93.     ULS's Vice President for Advancement (Ms. Zimmann's role) and the Vice President of Human Resources and Equity (Mr. Henry's role) positions had substantially the same responsibilities.

94.     Both positions required equal skill, effort and responsibility because both required a bachelor's degree. Both positions require substantially the same skill and effort because they

(1) are direct reports to the president of ULS; (2) had direct reports; (3) work and collaborate with other vice presidents; (4) support ULS's president in the advancement of ULS's policies and initiatives; (5) provide strategic leadership; and (6) are involved in recruitment and hiring of ULS's employees.

95.     ULS's actions have caused substantial damage to Complainant.

96.     Mr. Henry was impermissible deprived of his livelihood and benefits in the middle of the unprecedented Covid-19 pandemic.

97.     Moreover, Mr. Henry had to cope with the emotional distress caused by ULS's actions, as well as by his sudden loss of employment after Mr. Henry did the right thing by reporting the impermissible discrimination and retaliation that he others experienced.

98.     In the wake of these events, Complainant has experienced anxiety, headaches, insomnia, and chest pain, all of which has been attributed to work-related stress at ULS.

99.     Indeed, Mr. Henry has diagnosed and treated, by a medical professional, for mental health issues that flow from his time as an employee at ULS.

100.    The mental health issues that flow from his treatment at the hands of ULS has been a barrier to Mr. Henry maintaining subsequent employment.

**COUNT I**
**UNDER FEDERAL LAW**
**S.C. SECTION 1981 – RETALIATION AND HOSTILE WORK ENVIRONMENT**
**(Plaintiff v. all Defendants)**

101.    Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

102.    42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and

equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

103.    Plaintiff, as a member of the Black and/or African-American race, was discriminated against by Defendants because of her race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

104.    Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

103.    Section 1981 prohibits retaliation against employees who complain about race discrimination.

104.    In response to Mr. Henry's protected activities, ULS has retaliated against Mr. Henry by subjecting Mr. Henry to a hostile work environment and terminated Mr. Henry's employment.

105.    In response to Mr. Henry's protected activities, ULS has retaliated against Mr. Henry by subjecting Mr. Henry to a hostile work environment and terminated Mr. Henry's employment.

106.    On information and belief, ULS's retaliation against plaintiffs was willful and intentional.

107.    On information and belief, ULS engaged in retaliatory conduct with malice and/ or reckless indifference to Plaintiff's civil rights protected by federal law.

108.    ULS failed to discharge, suspend, reprimand, or otherwise discipline President Emory for President Emory's retaliatory conduct.

109.    As a direct and proximate result of ULS's retaliatory violations of Section 1981 (42 U.S.C. § 1981), Plaintiff has suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of their personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life.

110.    To remedy the violations of the rights of Plaintiff secured by Section 1981, Plaintiff requests that the Court award them the relief prayed for below.

**COUNT II**
**TITLE VII – DISPARATE TREATMENT & HOSTILE WORK ENVIRONMENT**
**(Plaintiff v. ULS)**

111.    Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

112.    Title VII prohibits retaliation against employees who oppose practices made unlawful by Title VII, make charges, or assist or participate in any Title VII investigations or proceedings.

113.    In response to Mr. Henry's protected activities, ULS has retaliated against Mr. Henry by subjecting Mr. Henry to a hostile work environment and terminated Mr. Henry's employment.

114.    On information and belief, ULS's retaliation against Plaintiff was willful and intentional.

115.    On information and belief, ULS engaged in retaliatory conduct with malice and/ or reckless indifference to Plaintiff's civil rights protected by federal law.

116.    ULS failed to discharge, suspend, reprimand, or otherwise discipline President Emory for President Emory's retaliatory conduct.

117.    As a direct and proximate result of ULS's retaliatory violations of Title VII (42 U.S.C. § 2000e-3), Mr. Henry has suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of their personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life.

118.    To remedy the violations of the rights of Plaintiff secured by Title VII, Plaintiff requests that the Court award them the relief prayed for below.

## COUNT III
## RETALIATION UNDER TITLE VII
### (Plaintiff v. ULS)

119.    Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

120.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

121.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.  Defendants took action against Plaintiff due to Plaintiff's opposition to Defendants' discrimination and harassment of Plaintiff and subject to Plaintiff engaging in protected activity.  Defendants also took action against Plaintiff due to Plaintiff's protected activity in reporting, investigating and attempting to ameliorate discrimination and harassment in the workplace.

15

**COUNT IV**
**PHRA – DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**
**(Plaintiff v. ULS)**

122.    Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

123.    The PHRA prohibits retaliation against employees who oppose practices made unlawful by the PHRA, make charges, or assist or participate in any PHRA investigation or proceeding.

124.    In response to Mr. Henry's protected activities, ULS has retaliated against Mr. Henry by subjecting Mr. Henry to a hostile work environment and terminated Mr. Henry's employment.

125.    On information and belief, ULS's retaliation against plaintiffs was willful and intentional.

126.    On information and belief, ULS engaged in retaliatory conduct with malice and/ or reckless indifference to Plaintiff's civil rights protected by Pennsylvania state law.

127.    ULS failed to discharge, suspend, reprimand, or otherwise discipline President Emory for President Emory's retaliatory conduct.

128.    As a direct and proximate result of ULS's retaliatory violations of the PHRA (43 P.S. § 955(d)), Mr. Henry has suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of their personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment,

disruption of his personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life.

129.    To remedy the violations of the rights of Plaintiff secured by the PHRA, Plaintiff requests that the Court award them the relief prayed for below.

## COUNT V
## RETALIATION UNDER STATE LAW
### (against all named Defendants)

130.    Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

131.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

132.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.  Specifically, Defendants took action against Plaintiff due to Plaintiff's opposition to Defendants' discrimination and harassment of Plaintiff. Defendants also took action against Plaintiff due to Plaintiff's protected activity in attempting to investigate, report and ameliorate discrimination and harassment in the workplace.

## COUNT VI
## DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING
### (against individual Defendant only)

133.    Plaintiff  hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

134.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

135.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.  Defendants aided and abetting the above discrimination and retaliation.

## COUNT VII
## PFPO – DISCRIMINATION & HOSTILE WORK ENVIRONMENT
### (Plaintiff v. All Defendants)

136.    Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

137.    The PFPO prohibits retaliation against employees who oppose practices made unlawful by the PFPO, make charges, or assist or participate in any PFPO investigation or proceeding.

138.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice:  "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual

orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

139.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions by subjecting Plaintiff to adverse action in response to Plaintiff's protected activity.

140.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.   Plaintiff claims violations of the Philadelphia Fair Practice Ordnance due to Defendants' discrimination against Plaintiff due to Plaintiff's race and protected activity.

141.    In response to Mr. Henry's protected activities, ULS has retaliated against Mr. Henry by subjecting Mr. Henry to a hostile work environment and terminated Mr. Henry's employment.

142.    In response to Mr. Henry's protected activities, ULS has retaliated against Mr. Henry by subjecting Mr. Henry to a hostile work environment and terminated Mr. Henry's employment.

143.    On information and belief, ULS's retaliation against plaintiffs was willful and intentional.

144.    On information and belief, ULS engaged in retaliatory conduct with malice and/ or

reckless indifference to Plaintiff's civil rights protected by Philadelphia city law.

145.    ULS failed to discharge, suspend, reprimand, or otherwise discipline President Emory for President Emory's retaliatory conduct.

146.    As a direct and proximate result of ULS's retaliatory violations of the PFPO (§ 9-1103), Mr. Henry has suffered and will continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of their personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life continue to suffer loss of income, pension and fringe benefits, bonuses, retirement and welfare benefits provided by ULS to its employees, physical pain and suffering, personal humiliation, embarrassment, disruption of his personal and professional life, and loss of enjoyment of the ordinary pleasures of everyday life.

147.    To remedy the violations of the rights of Plaintiff secured by the PFPO, Plaintiff requests that the Court award them the relief prayed for below.

## COUNT VIII
## RETALIATION UNDER THE
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all named Defendants)

147.    Plaintiff, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

148.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this

Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

149.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.


**COUNT IX**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE – AIDING AND ABETTING**
**(against individual Defendant only)**

150.    Plaintiff, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

151.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

152.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.  The individual Defendants aided and abetting the campaign of discrimination, harassment and retaliation against Plaintiff due to Plaintiff's race and retaliation for Plaintiff opposing said discrimination and harassment in the workplace and attempting to investigate and remediate.

21

## COUNT X
## FMLA RETALIATION
### (Plaintiff v. All Defendants)

153.    Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

154.    Plaintiff was an "eligible employee" within the meaning of the FMLA because he was:

    a.  employed by Defendant for a period of at least twelve (12) months; and

    b.  worked at least 1,250 hours in the twelve-month period immediately preceding what the Defendant should have perceived as a request for FMLA leave.

155.    Plaintiff was entitled to FMLA leave and protections associated thereto.

156.    Plaintiff took personal leave from work, as Plaintiff was entitled to.

157.    Subsequently, Plaintiff was retaliated against for taking leave that Plaintiff was entitled to under FMLA.

158.    Plaintiff went from being a highly regarded employee by President Emory to being terminated.

159.    Plaintiff's termination violated the FMLA.

160.    §2612 of the FMLA states in pertinent part:

(a) In General

  (1) Entitlement to leave

    Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period of one or more of the following:

      (A) Because of the birth of son or daughter of the employee and in order to care for such son or daughter.

      (B) Because of the placement of a song or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

161.   Defendants violated Plaintiff's rights under the FMLA by interfering with Plaintiff's leave by continuously misleading Plaintiff and by giving her incorrect information about her leave eligibility.  Defendants also approved Plaintiff's leave under the FMLA and then terminated her employment during her FMLA leave.

162.   Defendants made various oral and written representations and should be estopped from asserting that Plaintiff did not qualify for FMLA leave.

163.   Plaintiff would have modified her conduct and not have sought continuous and/or intermittent leave, if she had known that her employer would count such leave as adverse incidents, and thus, detrimentally relied on employer's representations.

164.   Defendants, by and through its managers, officials, and employees, by acts or representations intentionally or through culpable negligence included Plaintiff to believe that certain facts existed regarding her right to FMLA leave or leave that would not be counted against her and she justifiably relied and acted upon such belief, so that she will be prejudiced if the Defendant is permitted to deny the existence of such facts.

165.   Defendants violated Plaintiff's rights by failing to provide her with appropriate leave thereunder.

166.   § 2615 of the Act states as follows: Prohibited acts

(a) Interference with rights

(1) Exercise of rights:

   It shall be unlawful for any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination:

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter

167.   Defendants interfered with Plaintiff's rights under the above section and discriminated against Plaintiff and discharged Plaintiff from her employment for opposing Defendants' unlawful employment practices and attempting to exercise his rights.

## COUNT XI
## WAGE DISCRIMINATION IN EMPLOYMENT
## IN VIOLATION OF THE EQUAL PAY ACT OF 1963
### (Plaintiff v. All Defendants)

168.   Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

169.   The Equal Pay Act of 1963, as amended (Pub. L. 88-38) (amending the Fair Labor Standards Act) prohibits discrimination on account of sex in the payment of wages by employers engaged in commerce or in the production of goods for commerce.

170.   Section 206 [Section 6} of the Equal Pay Act at (d)(I) specifically states that "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which the employer pays wages to employees of the opposite sex in such establishment for equal work on jobs, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

171.   Defendants are engaged in commerce and subject to the act.

172.   As described above, Plaintiff has been discriminated against in terms of pay, when

a female vice president was paid more.

173.    Mr. Henry and his comparator vice president roles are virtually the same, requiring equal skill, effort, responsibility and are performed under similar working conditions.

174.    Defendants are liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the hostile work environment created by the actions and statements of its Board, CEO, managers and employees.

175.    Defendants are liable for the acts of its Board, CEO, its management, and coworkers, because it knew of their proclivities when it came to unequal pay discrimination towards Plaintiff, but did nothing about it.

176.    Pay discrimination detrimentally affected Plaintiff and made him suffer damages.

177.    Defendants are liable for the acts alleged herein because its Board and managers established the culture, which encouraged pay discrimination, harassment and retaliation, as well as other forms of discrimination.

178.    As a result of such conduct by Defendants, Plaintiff has suffered damages and is entitled to back pay, compensatory damages and award of legal fees suffered by her as a consequence of Defendants' illegal conduct.

179.    The described unlawful employment practices by Defendants were intentional and were done with malice or reckless indifference to Plaintiff's rights protected by the Equal Pay Act.

180.    The effect of the aforementioned practices has been to deprive Plaintiff of equal employment opportunities and adversely affect her status as an employee.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks the following relief on behalf of himself and all others

similarly situated:

E.  declaring the acts and practices complained of herein to be in violation of Title VII;

F.  declaring the acts and practices complained of herein to be in violation of Section 1981;

G.  declaring the acts and practices complained of herein to be in violation of the Equal Pay Act;

H.  declaring the acts and practices complained of herein to be in violation of the PHRA;

I.  declaring the acts and practices complained of herein to be in violation of the PFPO;

J.  enjoining and permanently restraining the violations complained of herein;

K.  entering judgment against the defendants and in favor of the plaintiffs in amounts to be determined;

L.  awarding compensatory damages to make the Plaintiff whole for all lost earning, earning capacity and benefits, past and future, which Plaintiffs has suffered or will suffer as a result of defendants' improper conduct;

M.  awarding plaintiffs reinstatement or, in lieu thereof, front pay;

N.  awarding compensatory damages to plaintiffs for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of enjoyment of the ordinary pleasures of everyday life, which plaintiffs have suffered or will suffer as a result of defendants' improper conduct;

O.  awarding punitive damages to plaintiffs under Title VII, Section 1981 and

the PFPO;

P.      awarding liquidated damages to plaintiffs under the ADEA;

Q.      awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the Equal Pay Act, the PHRA and the PFPO;

R.      awarding Plaintiff the costs of suit, expert fees and other disbursements, and pre- and post-judgment interest, and reasonable counsel fees; and

S.      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

 Plaintiff requests a jury trial on all issues to be tried.


                                        **DEREK SMITH LAW GROUP, PLLC**
                                        *Attorney for Plaintiff*


                            BY:_____/s/ Seth D. Carson_____
                                        Seth D. Carson, Esq.
                                        1835 Market Street
                                        Suite 1950
                                        Philadelphia, PA 19103
                                        Phone: 215.391.4790
                                        Email: seth@dereksmithlaw.com

DATED: November 17, 2022